## J. W. BROWN v. M. LEVY.

### Decided May 21, 1902.

**1.—Building Contract—Mistake in Bid—Forfeit.**

Defendant having advertised for bids to erect a building according to plans and specifications furnished, accompanied with deposit of a certified check as a forfeit to secure the making of a bond for compliance with a bid if accepted, a bidder who, by mistake in addition of the items of his estimate, made his bid for $10,000 less than the sum of those items as he had intended, for which mistake the defendant was in no way responsible, forfeited such deposit by his refusal, on discovery of his mistake, to give bond in accordance with his undertaking, and could not recover back the amount of the check which defendant, on such refusal, had collected.

**2.—Same—Bond for Compliance With Bid.**

A contractor whose bid for constructing a building had been accepted, being required, by his acceptance of the proposals as advertised, to furnish bond within ten days for performance of the conditions of his contract, did not comply therewith by the tender of a bond imposing upon the other party the performance of conditions for the protection of the surety which would not otherwise be required of him, such as compelling him to give immediate notice to the surety of any default by the principal, or, if the parties could contract to change the period of limitation, by requiring suit on the bond to be brought within six months.

Appeal from the County Court of Falls. Tried below before Hon. W. E. Hunnicutt.

*Stanley Thompson* and *Z. I. Harlan,* for appellant.

*Martin & Eddins,* for appellee.

KEY, ASSOCIATE JUSTICE.—This appeal is prosecuted from a judgment sustaining certain exceptions and dismissing the plaintiff's suit. Omitting formal parts, plaintiff's petition reads as follows:

"That heretofore, on and prior to July 3, 1900, the plaintiff was and he now is a contractor and builder, engaged in the business of

erecting buildings for persons in the State of Texas and elsewhere and in furnishing the material and builder's supplies entering into the construction of such buildings. That on the —— day of June, 1900, and prior to July 3, 1900, the defendant advertised the fact that he would receive at Marlin, Texas, until 3 p. m. Tuesday, July 3, 1900, sealed proposals for the erection of a hotel building at Marlin, Texas, in accordance with certain plans and specifications referred to in said advertisement, requiring therein that each bid or proposal for the erection of said building should be accompanied by a certified check for the sum of $500 payable to said defendant, to be forfeited by the accepted bidder, should he fail to make satisfactory bond in ten days from the acceptance of his bid.

"That in response to said advertisement, plaintiff came to Marlin, and on said July 3, 1900, and within the hours permitted under said advertisement, made, submitted, and delivered to defendant his said sealed proposal for the construction and erection of such hotel building as described in said plans and specifications for the sum of $64,000, accompanying his said proposal with a certified cashier's check on the South Texas National Bank of Houston, Texas, of date about June 28, 1900, for the sum of $500 payable to plaintiff, and by plaintiff indorsed to defendant, a better description of which said check plaintiff is unable to give at this time, for the reason that the same has been paid and is held by said bank, and said bank declines to surrender the possession of the same to plaintiff that he may obtain a better description thereof; that plaintiff's said proposal for the construction and erection of said buildings was accepted by defendant, and the contract for the construction and erection thereof awarded to plaintiff on his bid of $64,000. Plaintiff shows to the court that there was a number of other contractors and builders who submitted proposals to defendant at the same time, for the erection of said building, and each of said contractors, as well as plaintiff, had to use one set of the plans and specifications for said building in making his calculations as a basis for his proposal to be submitted to the defendant, and that no two could use said plans and specifications at one and the same time, and that by reason of the premises, plaintiff was unable, by the exercise of all proper and reasonable diligence, which he alleges he did use, to obtain possession of said plans and specifications in order to make his calculations on the amount of labor and material and the cost thereof, necessarily entering into the construction and erection of said building in accordance with said plans and specifications, until a few hours prior to the time fixed and limited in which proposals for the erection of said building could be submitted; that the said plans and specifications were very voluminous and specific, entering largely into minute details as to the character and kind of material which should be used in said building, and required a calculation to be made as to the cost of each general item entering into the construction of the said building in order that the bidder might submit an approximately safe and conservative bid; that in making his estimate and

calculations as a basis for his proposal for the erection of said building, plaintiff figured and estimated the cost of the various kinds and quantities and qualities of labor and material required by said plan and specification to be used in said building, and set down opposite to each general item so entering into its construction his estimated cost of the same, considering the quality and quantity required of it; that in his haste in adding up the sums of said several items so estimated by him he made a mistake of $10,000 in his addition, making said items foot up in the gross the sum of $64,000, when the same correctly footed and added up would and will amount to the gross sum of $74,000, thus making the bid really intended to be submitted by plaintiff the sum of $74,000 instead of $64,000; that plaintiff did not detect his said error in his said addition until after his said bid had been accepted by the defendant, and said contract for the erection of said building awarded to him at said sum of $64,000; that within a reasonable time after detecting his mistake, to wit, on July 4, 1900, and before defendant had changed his position in any way to his disadvantage, plaintiff notified defendant of his mistake, pointed the same out to him and requested that the same be corrected, or that being denied, that plaintiff be permitted to withdraw his said bid and proposal, both of which requests the defendant refused, and immediately on said July 4, 1900, and before the expiration of the ten days from the acceptance of his said bid allowed him by the terms of said advertisement and his accepted proposal in which to make bond as provided in said advertisement, declaring plaintiff to be in default, indorsed said check, presented it to said bank for payment, received payment therefor, and converted said check and said $500 to his own use and benefit, to plaintiff's damage the said sum of $500; that by reason of said mistake, said proposal as submitted by plaintiff did not truly reflect and submit plaintiff's proposal for the erection of said building, and to permit defendant to reap the advantages of such mistakes, declare plaintiff in default, as aforesaid, and retain the proceeds of plaintiff's said check, obtained as aforesaid, and thus converted and appropriated, would be unconscionable and unjust; that correcting said mistake and making plaintiff's proposal the true amount which a correct addition of the estimated cost of the several items entering into the construction of said building as aforesaid, and plaintiff's bid would still be something like $2000 below any other bids submitted; that said building could not be erected according to said plans and specifications without the loss of several thousand dollars on a bid of $64,000.

"Plaintiff further shows to the court that he resides in Harris County, Texas, and that the defendant resides in Falls County, Texas. That heretofore, on and prior to July 3, 1900, the plaintiff was and he now is a contractor and builder, engaged in the business of erecting buildings for other persons in the State of Texas and elsewhere, and in furnishing the material and builders' supplies entering into the construction of such buildings.

"That on the —— day of June, 1900, and prior to July 3, 1900, the defendant advertised the fact that he would receive at Marlin, Texas, until 3 p. m., Tuesday, July 3, 1900, sealed proposals for the erection of a hotel building at Marlin, Texas, in accordance with certain plans and specifications referred to in said advertisement, requiring therein that each bid or proposal for the erection of said building should be accompanied by a certified check for the sum of $500, payable to said defendant, to be forfeited by the accepted bidder, should he fail to make satisfactory bond in ten days from the acceptance of his bid.

"That in response to said advertisement plaintiff came to Marlin, and on said July 3, 1900, and within the hours permitted under said advertisement, made and submitted and delivered to defendant his sealed proposal for the erection and construction of said buildings, as described in said plans and specifications, and in accordance with said plans and specifications, for the sum of $64,000, accompanying his said proposal with a certified cashier's check on the South Texas National Bank of Houston, Texas, of date June 28, 1900, for the sum of $500, payable to plaintiff, and by plaintiff indorsed to defendant, a better description of which said check plaintiff is unable to give at this time, for the reason that it is held by said bank, and said bank declines and refuses to surrender the possession of the same to plaintiff that he may obtain a better description thereof; that plaintiff's said proposal for the construction and erection of said building was accepted by the defendant, and the contract for the construction thereof in accordance with said plans and specifications, was awarded to plaintiff on his said bid of $64,000, and by the terms of said advertisement and plaintiff's said proposal, plaintiff had ten days from the date of acceptance of his said proposal in which to make the bond contemplated in and required by said advertisement and proposal; that plaintiff was ready and willing and could have made said bond within said time, but the defendant, in violation of the terms of his said advertisement and the contract between himself and plaintiff made and consummated by the acceptance of plaintiff's said proposal, and before the expiration of said ten days, on or about July 4, 1900, indorsed said check, and on or about July 5, 1900, presented and caused it to be presented to said bank for payment, and was paid thereon the sum of $500, which he appropriated to his own use, and refused to accept a good and sufficient bond in the required amount made by plaintiff and tendered to him within said ten days, on or about July 12, 1900, in compliance with said proposal, with this plaintiff as principal and the Fidelity and Deposit Company of Maryland, as surety, a substantial copy of which said bond it attached hereto, is marked exhibit X, and is made a part hereof, but converted and appropriated said check as aforesaid, and still retains said money, to plaintiff's damage the sum of $500.

"Wherefore, premises considered, plaintiff sues and prays that the defendant be cited to answer this petition, and that on final trial hereof

he have judgment against the said defendant for the said sum of $500, with the interest thereon from the date of the conversion of said check, for costs of suit and for general relief."

"EXHIBIT X.
"Bond No. ——.
"Fidelity and Deposit Company of Maryland.
"Home Office, Baltimore, Md.

"Know all men by these presents, that J. M. Brown, of Houston, Texas (hereinafter called principal), and the Fidelity and Deposit Company of Maryland, a corporation created and existing under the laws of the State of Maryland, having its principal office in the city of Baltimore, Md. (hereinafter called the surety), represented by Alexander G. Robb, Gen. Agent, in the city of Houston and State of Texas, are held and firmly bound unto M. Levy, of Marlin, Texas (hereinafter called the owner), in the full and just sum of $19,200 (nineteen thousand two hundred dollars), good and lawful money of the United States of America, to the payment of which said sum of money well and truly to be made and done, the said principal bind themselves, their heirs, executors, and administrators, and the said surety binds itself, its successors and assigns, jointly and severally, firmly by these presents: Signed, sealed, and dated the 12th day of July, A. D. 1900.

"Whereas said principals have entered into a certain written contract, bearing date July 12, A. D. 1900, with said owner, to furnish all of the labor, materials, and other things requisite, to do and perform all things contemplated by said contract, which contract, together with all of its terms, covenants, conditions, specifications, and stipulations, is incorporated herein and made to form a part hereof, as fully and amply to all intents and purposes as if said contract was recited at length herein.

"Now therefore, the condition of the foregoing obligation is such, that if the said principal shall well and truly and faithfully comply with all of the terms, covenants and conditions of said contract on their part to be kept and performed according to the tenor of said contract, then this obligation to be null and void, otherwise to be and remain in full force and virtue in law.

"This bond is executed by the surety upon the following express conditions, which shall be conditions precedent to the right of the owner to recover hereunder:

"The owner shall keep, do and perform each and every, all and singular, the matters and things set forth and specified in said contract to be by the owner kept, done and performed at the time and in the manner in said contract specified. The said surety shall be notified in writing of any act on the part of the said principal, or their agents or employes which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or his duly authorized representative or representatives, whoever shall have the supervision of the completion of

said contract, and a registered letter mailed to the president of said surety, at its principal office in Baltimore City, Maryland, shall be the notice required within the meaning of this bond.

"If the said principal shall abandon said contract, or fail to comply with any or all of the conditions of said contract to such an extent that the same shall be forfeited, then said surety, upon the notice above stated, shall have the right and privilege, in their option, to sublet or complete said contract, whichever said surety may elect to do, provided it be done in accordance with said contract, and if said contract shall be sublet or completed by said surety, then the reserve in the hands of the said owner, together with any other moneys due or to become due, shall be paid by said owner to said surety, at the times mentioned in said contract, on account of any loss or expenses arising out of said contract and any loss or expenses sustained by said surety in subletting or completing said contract; and if said owner shall complete or relet the said contract, then all reserves, deferred payments and any and all moneys and properties at that time due and payable, or that may thereafter become due and payable to the said principal, under and by virtue of said contract, shall be credited upon any claim the said owner may make upon said surety, because of the failure of said principal to comply with the terms of said contract. If any suits at law or proceedings in equity are brought against said surety to recover any claim hereunder the same must be instituted within six months after the completion of the work specified in said contract. The said surety shall not be liable for an amount in excess of the penalty of this bond.

"In testimony whereof, the said principal have hereunto set their hands and seals, and the said surety have caused this instrument of writing to be signed by its Norman G. Kittrell, director, and its general agent, A. G. Robb, and its corporate seal to be hereunto affixed, the day and year first above written.

[L. S.]                            "J. M. BROWN,        [Seal]
                                                       [Seal]
                                                       [Seal]
                                                       [Seal]
                                                   "Principals.
            "FIDELITY AND DEPOSIT COMPANY OF MARYLAND,
                            "By Norman G. Kittrell, Director.
"Attest:        ander G. Robb, General Agent."

The court sustained exceptions to each count in the petition, which exceptions were, in substance, general demurrers. We think the court ruled correctly. The first count in the petition shows that the plaintiff made a proposition to erect the building for the gross sum of $64,000, and that the defendant accepted that proposition. This shows a consummated agreement, constituting a binding contract, unless the mistake made by the plaintiff in procuring data for his bid should be held sufficient to release him from the contract. That it should not be given

that effect is, we think, quite clear. The petition fails to show that the defendant was in anywise responsible for the mistake referred to. When the plaintiff offered to build the house for a specified sum, and the defendant accepted the offer, a binding contract was made, and it was of no consequence, in so far as the validity of the contract was concerned, that the plaintiff had made a miscalculation in forming his preliminary estimates.

We also hold that the second count in the petition is subject to a general demurrer. Conceding that the contract, which required the plaintiff to tender the defendant a satisfactory bond within ten days from the acceptance of the bid, did not confer upon the defendant the right to reject a good and solvent bond for capricious or whimsical reasons, still we are of the opinion that he had the right to reject the bond that was tendered. The purpose of the bond designated in the advertisement for bids was to secure to the defendant performance of the contract entered into by the successful bidder; and it was not contemplated that the bond should impose upon the defendant the performance of acts he would not otherwise be required to perform for the protection of the surety on the bond. Hence we hold that the stipulation in the bond requiring immediate notice in writing to the surety of any default by the principal would have placed an obligation upon the defendant which he was not required by the contract to assume, and justified him in rejecting the bond. And if parties to a contract have the power to change the statute of limitations, the stipulation requiring suit upon the bond to be instituted within six months was subject to the same objection.

Applying the law to the plaintiff's petition, we hold that he has no case, and the judgment against him will be affirmed.

*Affirmed.*